KINSEY *v*. AMERICAN ORE CORPORATION.

4-6559                                             158 S. W. 2d 32

Opinion delivered January 19, 1942.

*Robt. L. Netherly, M. R. Keith, J. J. McCaleb* and *L. P. Biggs,* for appellant.

*G. H. Smith, V. J. Hermcl* and *S. M. Casey,* for appellee.

SMITH, J.   All property of the American Ore Corporation, hereinafter referred to as the corporation, in the State of Arkansas, is in receivership now pending in the Independence chancery court.   Robert G. Kinsey, hereinafter referred to as appellant, and C. D. Metcalf, are the receivers, and have been acting in that capacity since their appointment on August 11, 1938.

After the appointment of appellant Kinsey, who was the secretary of the corporation, as one of the receivers, he filed suit, in his individual capacity, against the corporation, and recovered judgment for $2,440.80 in the Fourth Judicial District Court of Hennepin county, Minnesota.   The suit was for alleged services in making audits and corporation reports covering the period from

1924 to 1938, or 14 years, at the rate of $15 per month. After recovering this judgment, which was rendered December 9, 1939, appellant filed it in the Independence chancery court as a claim against the estate of the corporation in receivership. Certain stockholders of the corporation filed exceptions to the claim and protested its allowance on various grounds and, among others, these: It was collusively obtained; and was recovered in a court having no jurisdiction; and was upon a claim for services but little of which had been rendered and at an excessive charge therefor, most of which was barred by the statute of limitations, had that defense been interposed; and that the plaintiff lacked capacity to sue, inasmuch as he was serving as receiver when the suit was instituted.

The court below disallowed the claim, and from that decree is this appeal.

Able briefs, evincing much research and investigation, have been filed by opposing counsel, which discuss these and other questions; but appellant concedes that his judgment is not impervious to an attack upon the jurisdiction of the court which rendered it. That it is not is a question definitely settled by the decisions of this court in the following cases: *Miller* v. *Brown*, 170 Ark. 949, 281 S. W. 904; *Lewis* v. *United Order of Good Samaritans*, 182 Ark. 914, 33 S. W. 2d 53; *Cronin* v. *Union-aid Life Ins. Co.*, 184 Ark. 493, 42 S. W. 2d 758; *Sessing* v. *Great Western Coal Co.*, 196 Ark. 869, 120 S. W. 2d 361. Such appears to be the holding of all courts on this subject.

The contention that the court was without jurisdiction is based upon the following facts which are either undisputed or clearly established by the testimony. The corporation was organized in and chartered under the laws of the State of Arizona, but had been dissolved by the proper authorities of that state on January 10, 1935, on account of its failure to comply with the laws of that state.

The corporation still owns a tract of mineral land in this state, from which it has derived annual royalties

amounting to from $200 to $350 per year. It is this property of which the receivers have charge. The corporation owned at one time mineral lands in the states of Minnesota, Colorado, and Arizona, but these appear to have been lost through failure to pay the taxes due thereon.

Dwight E. Woodbridge, a resident of Duluth, Minnesota, is now and has been the president of the corporation since its organization in 1920, and it was upon him that the process was served in the suit against the corporation in which the judgment was rendered. He interposed no defense, and did not advise other stockholders of the pendency of the suit, and the judgment was rendered by default for the want of an answer. He explained his inaction by saying that he knew the claim was just.

A letter, dated January 11, 1937, inquiring about the status of the corporation, addressed to Woodbridge, was offered in evidence, on the bottom of which he had written this reply: "The American Ore Corporation is practically dead. In ten years or more it has not earned enough to pay its taxes, and it has been unwilling to make any attempt to sell stock, so it has been unable to pay taxes on any but its small manganese property since 1930. It receives a slight and intermittent royalty from manganese, but nothing can be figured definitely from that source, which may end at any moment. I consider the stock valueless. Very little was ever sold to the public, under a former permit from the Minn. Sec. Commission only 500 shares, as I recall it. Most of the issued stock came from distribution to former holders of Copper Buttes and other concerns that were taken over when copper looked better than it has since. Yours very truly, (signed) Dwight E. Woodbridge."

The manganese property referred to, from which the slight and intermittent royalty was received, and on which only the taxes were paid, appears to be the Arkansas property in receivership.

Appellant testified that the principal services for the corporation for which he sued consisted in making reports and tax returns, but he admitted that his last report to the Arizona Corporation Commission was made in June, 1932.

A letter from Woodbridge to Kinsey, dated September 6, 1937, was read in evidence as follows: "I am inclosing herewith check for $100 being on account of your service rendered the American Ore Corporation during the years up to 1934. Please acknowledge receipt and oblige. I hope to be able to send you further amounts on your bill in due time, though when or how much—or if anything at all—I am unable to state." There is no intimation here that Kinsey had rendered service subsequent to 1934; but an earlier letter from Woodbridge to Kinsey dated November 16, 1936, reads as follows: "This morning I received check for royalties from the Arkansas manganese amounting to $317.32, the first since early this year, and the largest for some years. I have paid a bill for envelopes amounting to $3.31, leaving $314.01, and am sending you, on account for services rendered the corporation, a partial payment of $157. Will you make out a proper receipt and send it to me at your early convenience. I cannot see any other use for this money that is half so important as paying you and me for the work we have been doing for so long, insofar as this amount of money will go. I have no reason to expect any further payments for a long time to come."

Both appellant and Woodbridge testified that the corporation was doing business in Minnesota in 1939 when the judgment was rendered; but the probative value of this testimony was destroyed by admissions which they made and other testimony. For instance, upon his cross-examination Woodbridge testified as follows: "Q. Did the American Ore Corporation do any mining business in Minnesota in the year 1939? A. No, sir. Q. Did they do any mining business anywhere in 1939? A. No, sir. Q. Did they do any other business in 1939 in Minensota? A. Attended to correspondence. Q. In connection with what? A. Taxes, and requests from stockholders as to the condition of the company, etc. Q. And that is the only business that was done in 1939 in Minnesota? A. So far as I recall, yes. Q. Did the American Ore Corporation in 1939 have any authority from the State of Minnesota to do business in Minnesota? A. I would hardly

know, as that is a legal situation with the Securities Commission. I wouldn't know."

This is information which the president of the company might well be expected to have; but Woodbridge stated that he had no recollection of taking any action conforming to the laws of Minnesota permitting foreign corporations to do business in that state.

On the contrary, there was offered in evidence a certificate by the Secretary of State of Minnesota reciting: "That I have made due and diligent search of the files and records in this office, and such search fails to reveal any record of a domestic corporation by the name of 'American Ore Corporation,' or that a foreign corporation of that name has ever made compliance with the foreign corporation law of this state."

The corporation maintained no office in Minnesota, although Woodbridge testified that he permitted it to use a part of his office, for which it paid no rent, and that it had not paid any rent for a good many years prior to 1939. The corporation was not listed in the city directory, and it had no telephone, and did not have its name on the door of the room where its office was, if it had one.

Affirmance of the decree is also asked upon the grounds, that the judgment was obtained by fraud; that appellant did not have the capacity to sue, in that he was serving as receiver of the corporation when he filed his suit; and that the corporation was not subject to suit, for the reason that it had been dissolved long before the suit was instituted. There appears to be merit in all these contentions; but it so clearly appears that the corporation was not doing business in Minnesota when the judgment was rendered that we affirm the decree upon that ground without considering the other questions.

In the case of *Cronin* v. *Unionaid Life Ins. Co., supra,* a foreign corporation did no business in the State of Oklahoma, where it was sued, except to collect premiums on insurance policies by mail and conduct correspondence incident thereto. In a suit in this state, upon a judgment rendered in the State of Oklahoma, rendered upon proper recitals of service against the corporation

foreign to that state, it was held that the corporation had not done business in the state of Oklahoma, and that the full faith and credit clause of the federal constitution, which is here invoked by appellant, applied only when the court rendering the judgment had jurisdiction, but that the recital of service in the foreign judgment is not conclusive, and may be impeached for want of jurisdiction by showing that no service was had and that there was no entry of appearance.

Here, it does not appear, from the authenticated record of the proceedings in the District Court of Minnesota where the judgment was rendered that it was alleged in the pleadings or recited in the judgment that the defendant corporation was a foreign corporation. . But we pretermit a discussion of this question, as well as of others raised, save only the question whether the corporation was doing business in the State of Minnesota, where the judgment was rendered, and, as we find the fact to be that it was not, the decree of the court below disallowing the claim in the receivership proceeding here is affirmed.